**STEVEN L. BROUNSTEIN PLLC**
*Attorney at Law*
32 Court Street
Brooklyn, New York 11201
Suite 408
(718) 875-5700
FAX (718) 625-6637
sbattylaw@gmail.com

January 28th, 2024

Via ECF

Hon. Rachel Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                        RE:    <u>United States v. Herbert Whiteley</u>
                                22-CR-00200(RPK)

Dear Judge Kovner:

      I represent Mr. Whiteley who is scheduled to be sentenced on February 7th. I respectfully submit this letter and the attachments in support of our request for leniency from the Court  Mr. Whiteley pled guilty to 21 USC 841(b)(1)(C) on May 19th 2023 pursuant to a plea agreement, during which he clearly and unequivocally accepted responsibility for his conduct.

      In preparing this submission I have reviewed the plea agreement, Pre-Sentence Report (PSR), my objection to the PSR, the addendum and response to my objection and the Governments submission of January 25$^{th.}$

PLEA AGREEMENT AND GUIDELINES

      The plea agreement contemplates an adjusted offense level of twenty-three (23). The calculation is premised on a base level of twenty-four (24) pursuant to USSG2D1.1(a)(5)(c)(8) (relating to the weight of the narcotics) and a base level of twenty (20) pursuant to USSG 2K2.1(a)(4)(A) as a felon in possession of a firearm. In fact, Mr. Whiteley did not plead guilty to being a felon in possession of a firearm, however he admitted to possession of a firearm that was recovered at his residence when a search and arrest warrant was executed at his home along with the fact that he does have a prior felony conviction. The guideline calculation would be the same if he pled to that charge or admitted to the possession without pleading guilty to it.  These

offenses are grouped together in the plea agreement resulting in an offense level of twenty-six (26). The consolidation of these offenses and a three (3) point reduction pursuant to USSG 3E1.1(a)+(b) result in the agreed upon level of twenty-three (23). Mr. Whiteley's criminal history category is one (1). Combining the guideline calculation and criminal history, Mr. Whiteley's exposure under the guidelines is forty-six (46) to fifty-seven months (57) of incarceration. As reflected in the PSR (par 33) even without pleading guilty to the felon in possession charge his guideline level would have been increased two (2) levels pursuant to USSG 2D1.1(b)(1) due to the possession of the firearm recovered in his residence. In either analysis, grouping or adding two points for the possession of the firearm, the adjusted offense level would be the same: twenty-three (23). While the mere presence and possession of the firearm is illegal, there is absolutely no evidence that Mr. Whiteley used, displayed or brandished the firearm at any time, particularly during his admitted sale or possession of the narcotics as reflected in par. twenty-two (22) of the PSR.

     We do, however, object to the two (2) level enhancement proposed by the probation department in par. thirty-four (34) of the PSR. The Probation Department added a two (2) level enhancement pursuant to 2D1.1(b)(12) because narcotics were recovered from his home.[1] The clear plain language triggering that enhancement is that "the defendant maintained a premise for the purpose of manufacturing or distributing a controlled substance". The probation department is wrong regarding their position as to the applicability of that enhancement. The Government in their submission while taking no position on the efficacy of the enhancement referenced *United States v. Vinales* 78 F.4th 550 (2nd. Cir 2023) which requires a view of the "totality of the circumstances" and is "fact based" Id. At 552-553 . Storage of the narcotics or paraphernalia in a home does not equate to a primary use or principal use of these premises for the sale of narcotics. The primary use of the instant premises was that it was Mr. Whitley's home. No sales or other narcotics related activity is associated with these premises, at all. No meetings or exchanges occurred in this location and it is unlike the facts in *Vinales*, where the premises were used for storing narcotics after the defendant no longer resided there. Mr. Whiteley and his family lived in this premise continuously and at no point did Mr. Whiteley move or maintain unoccupied premise for the purpose of manufacturing or distributing narcotics. The primary use of the premises was for residency, thus USSG 2D1.1(b)(12) is factually inapplicable here.

     As stated previously Mr. Whiteley's criminal history category is one (1) but both the PSR and the Government discuss his remote prior criminal conduct. In 1996, over twenty-three (23) years ago when he was eighteen (18) years old, he was involved in a very serious crime. He committed a robbery/burglary with another person. They entered the apartment after being let in by the victim with whom the co-defendant had a prior relationship. After entering the premises (without force) Mr. Whiteley stole money and left the premises. The co-defendant remained behind with the victim who the co-defendant restrained or threatened. Thereafter, without the knowledge, participation or presence of Mr. Whiteley, his co-defendant murdered the victim. Mr. Whiteley was

---

[1] That objection was forwarded to the Probation department on 12/12/23 see ECF #55.

arrested but not charged with the homicide. He readily admitted his guilt to the robbery and received a sentence of five (5) to ten (10) years of incarceration; his co-defendant was charged and convicted of the homicide and received a twenty-five (25) year sentence.  Mr. Whiteley served his sentence, was placed on parole without any violations.  Thereafter, his only conviction was for misdemeanor narcotics possession in 2011, at his arraignment he was sentenced to time served equating to one (1) night in custody.

## 18 USC 3553(A) SENTEINCING FACTORS

<u>United States v. Booker</u> 125 S.Ct.738 (2005) held that the Court must consider the guidelines, but they are no longer the primary factor in determining a sentence.  We respectfully ask the Court to consider additional factors, in particular Mr. Whiteley's current family situation.  The totality of factors the Court may consider in determining an appropriate sentence of are delineated in 18 USC 3553(a) which reads in part;

> "(a) Factors to be considered in imposing a sentence --The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed;
>   A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   B) to afford adequate deterrence to criminal conduct;
>   C) to protect the public from further crimes of the defendant; and
>   D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for
>   A) the applicable category of offense committed by the applicable category as set forth in the guidelines issued by the Sentencing Commission. "

When reviewing the enumerated factors, particularly deterrence, respect for the law, and punishment for illegal conduct we remind the Court that Mr. Whiteley unequivocally understood that he must be held accountable and faces a period of incarceration.  His conduct was plainly illegal and morally wrong. At our first meetings acknowledged that, and that he would likely be incarcerated.

3

Mr. Whiteley was born and raised in Brooklyn- a child of poverty at times homeless and residing in shelters. Eventually, he and his family obtained public housing. He had few personal possessions in addition to the clothes on his back. The family struggled to provide food on the table and provided little encouragement in pursuing a way out through education. In spite of this, when asked about his childhood, he does not complain, and says he was a happy child and describes his childhood as "very good". He has deep love for his mother, father and stepfather who are all deceased. Mr. Whiteley's father was an alcoholic which he believes led to his death at a young age. Mr. Whiteley has no bitterness, jealousy, or anger regarding the impoverished manner in which he grew up and has never used that as an excuse for his criminal conduct.

Mr. Whiteley has struggled with substance abuse. When he was arrested in this matter, he freely admitted that he used cocaine and marijuana. He was told that if he used cocaine while on his pre-trial release his freedom would be in jeopardy. Consequently, he has ceased using cocaine with help. Whatever sentence the Court metes out, we ask that he be permitted to continue with drug treatment either through the RDAP program administered by the Bureau of Prisons and or through the Department of Probation.

We have reiterated his acceptance of responsibility and his acknowledgement that he will be punished. His illegal conduct was not motivated by the desire for luxury goods or the accumulation of wealth or material items. It was motivated by his desire to survive- he could not make an adequate living to support his family. He was unable to obtain gainful employment to provide for his family. His economic circumstances were dire which was exacerbated by the pandemic. The money was used to provide shelter, clothing, and food for his family. No luxury items, vacations or jewelry was purchased. It is ironic that now when he faces incarceration, he finally found gainful employment at a bit above minimum wage at which he is thriving. The most painful part of facing this sentence is the effect it will have on his two sons aged 12 and 15. Those boys are the borne of a challenging relationship with Jecina McCrae who suffers from long term, continuous drug addiction. He also helped to raise Ms. McCrae's daughter with whom he has ongoing loving parental relationship. In 2016, while Mr. Whiteley was working as a cook in an upstate college cafeteria, he received an alarming phone call that his two sons who were with Ms. McCrae at the time, were now in the care of the Administration for Children's Services (ACS), taken into custody when their mother was observed violently striking the nine (9) year old in the head with a cell phone on a subway platform and being dragged with his younger brother. When the police officers sought to intervene, she became violent with them. It was then discovered that his two children were the subject of continuing abuse visited on them by their drug addicted mother. Almost eight (8) years later they still have trouble discussing that abuse. They are traumatized, but Mr. Whiteley is their rock he provides them with exceptional love and care, he is the responsible parent. Upon being notified by ACS, he did everything that was necessary to get his boys out of foster care to nurture and protect them and provide a stable and loving home. He went to every court appearance, and meeting with the authorities and was interviewed, vetted, and investigated himself by ACS to ensure their

safety and wellbeing, attending parenting classes and fulfilling all requirements. He obtained full custody in 2016; Ms. McCrae's involvement is sporadic at best; she provides no support financially or emotionally.. However, their father encourages the children to speak to their mother, but given the past abuse they are reluctant to speak to her and rarely if ever see her. They depend on Mr. Whiteley and his girlfriend. Mr. Whiteley's two teenage boys require special attention at school, based upon the trauma they suffered at the hands their mother. That trauma will be exacerbated further with the incarceration of their father.

The children now reside with Mr. Whiteley and his partner Janay Dolphin and her two teenage sons in a modest but safe and clean two (2) bedroom apartment in Laurelton, Queens. The four (4) boys share one room. Ms. Dolphin is a retail worker earning a modest salary. Mr. Whiteley appears to be advancing in his position working maintenance at Stop and Shop supermarket. He travels an hour and half each way to and from work via public transportation. He likes the work, and his employers and co-workers appreciate his good attendance and diligence. He feels there is room for advancement. He and Ms. Dolphin have built a loving caring home for their children and this blended family is working. Our greatest concern is what happens to this family upon Mr. Whiteley incarceration. Ms. Dolphin has the decent and heartfelt ambition to keep this family together. That desire faces obstacles and is unrealistic, she simply does not make enough money to pay for an apartment and provide for four (4) teenage boys. Additionally raising four teenage boys without assistance will be difficult. Legally she has no parental rights which allows for the potential scenario of their mother seeking custody. The psychological effect of Mr. Whitley's incarceration is potentially devastating. Mr. Whiteley knows that he is responsible for this and feels immeasurable guilt because of the impact on the family.

I have enclosed letters from friends who paint a picture of a loving friend, father and life partner. They characterize Mr. Whiteley as a good man who made a mistake. Theu describe him as parent with a primary objective is to take care of his "four" kids who will also help those in need. These letters reflect how far he has come, in the 23 years since his prior crime and since his arrest in this case. Despite that and the instant matter, he is worthy of consideration for leniency. His family commitment, his current employment and his emotional growth demonstrate that while imperfect, he is a decent man, who made terrible decisions when engaged in criminal conduct.

Prior to *Booker,* we would be seeking a departure from the guidelines premised on "extraordinary family circumstances". The probation department in their recommendation recognize the personal circumstances but they do not view them as rising to the level of mitigation. Respectfully, we vociferously disagree. The brunt of his punishment is not going to fall on him, it is going to fall on his family, on his extremely vulnerable children who face at best an uncertain future exacerbated by their past abuse by their mother who is unpredictable at best and criminal at worst.

We fully recognize that some punishment is appropriate, this crime was serious. We just ask the Court to recognize that Mr. Whiteley has the proven desire and ability to

cease engaging in any criminal conduct as evidenced by his current employment and care for children. Further general or specific deterrence are important factors, and any term of incarceration will serve that purpose.  I have deep concern that his absence will have a negative effect on the future of his and his partners sons.  His punishment will be visited on his family and his children, and he is acutely aware of that, however the long term effect of his incarceration will fall on his family.  It would be a terrible shame if his sons without his guidance, without his watchful eye would fall into the same circumstance, would be an awful circumstance.

    I ask the Court to consider his circumstances and the devastating effect it will have on sons when determining a fair and just sentence.

                                Respectfully submitted;
                                     /s/
                                Steven L. Brounstein